**FIRST INVESTMENT COMPANY,**
Plaintiff/Appellee,

v.

**ALLSTATE INSURANCE COMPANY,**
Defendant/Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 12, 1994.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 2, 1995.

David M. Waldrop, John M. Bryant, Jr., Brewer, Krause & Brooks, Nashville, for defendant/appellant.

James D. Kay, Jr., Nashville, for plaintiff/appellee.

## OPINION

KOCH, Judge.

This appeal involves a mortgagee's efforts to recover against its mortgagors' insurance policy after a fire damaged the mortgaged property. The mortgagee bid in the property at foreclosure and then sued the mortgagor's insurer in the Chancery Court for Davidson County after the insurer refused to pay its claim. The trial court granted the mortgagee's motion for summary judgment and awarded it $27,119. The insurer has appealed. We reverse the summary judgment because the mortgagee had no insurable interest under the mortgagor's insurance policy after it purchased the property at the foreclosure sale for the remaining amount of the mortgage.

## I.

Chester and Mary Powers purchased a duplex on Gina Brook Drive in Hermitage. They financed the purchase with a mortgage loan from First Investment Company ("First Investment") that was insured by the United States Department of Housing and Urban Development ("HUD"). Since they planned to rent out the duplex, Mr. and Mrs. Powers obtained a landlord's package policy from Allstate Insurance Company ("Allstate"). Allstate's policy named First Investment as a loss payee, and therefore, in the event of a covered loss, First Investment was entitled to insurance proceeds up to the amount of the underlying mortgage debt.

Fire partially destroyed the property on December 16, 1990. First Investment estimated the damages to be $30,855, but Allstate's damage estimate was approximately $5,000 lower. The Powers defaulted on their loan, and First Investment foreclosed on the property in September 1991, even though its insurance claim remained unresolved. First Investment purchased the property at the foreclosure sale for $57,794—the full amount of the remaining debt and other HUD-approved charges. It notified Allstate not only of the foreclosure proceedings but also of its purchase of the property at the foreclosure sale.

In November 1991, Allstate offered to pay First Investment $25,922 to resolve the insurance claim. Allstate later withdrew its offer and in March 1992 denied First Investment's claim on the ground that First Investment no longer had an insurable interest in the property following the foreclosure sale. First Investment filed suit against Allstate, and both parties sought a summary judgment because they agreed on all the material facts. Even though the trial court recognized that mortgagees lose their status as loss payees after a foreclosure extinguishes the mortgage indebtedness, it determined that the general rule was inapplicable in this case because HUD had deducted the estimated cost of repairing the damage from its mortgage insurance payment to First Investment.[1] Accordingly, the trial court directed Allstate to pay First Investment the difference between the property's price at the foreclosure sale and the mortgage insurance payments First Investment received from HUD.

## II.

Our role on an appeal from a summary judgment is to determine whether the requirements of Tenn.R.Civ.P. 56 have been met. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991); *Mansfield v. Colonial Freight Sys.*, 862 S.W.2d 527, 530 (Tenn.Ct.App.1993). Tenn.R.Civ.P. 56.03 permits summary judgments

---

1. A mortgagee who receives HUD insurance benefits must convey the property to HUD undamaged by flood, fire, earthquake, or tornado. *See* 24 C.F.R. § 203.378(a), (c) (1993). If the property has been damaged, the mortgagee may repair it before conveying it to HUD or may convey it to HUD in damaged condition with HUD's approval. If the mortgagee chooses to convey the property in damaged condition, HUD deducts from the loan insurance proceeds the greater of either the estimated cost of repair or any other insurance benefits the mortgagee has received. *See* 24 C.F.R. § 203.379(a) (1993).

when there are no genuine material factual disputes and when the moving party is entitled to a judgment as a matter of law.

Since the parties agree on the material facts, we need only concern ourselves with whether First Investment was entitled to a judgment against Allstate as a matter of law. The trial court's resolution of this issue is not entitled to a presumption of correctness because it involves only a question of law, not a question of fact. *Cowden v. Sovran Bank/Central South,* 816 S.W.2d at 744; *Gonzales v. Alman Constr. Co.,* 857 S.W.2d 42, 44 (Tenn.Ct.App.1993); *Winn v. Tucker Corp.,* 848 S.W.2d 64, 67 (Tenn.Ct.App.1992).

### III.

A mortgagee has an insurable interest in the mortgaged property. *Philadelphia Fire & Marine Ins. Co. v. Fields,* 13 Tenn.App. 485, 491 (1931); *National Liberty Ins. Co. v. Rogers,* 2 Tenn.App. 253, 257 (1926). Its rights under an insurance policy are generally fixed at the time of the loss and are based on the amount of the mortgage. *National Union Fire Ins. Co. v. Davis,* 54 Tenn.App. 255, 260–61, 389 S.W.2d 941, 943–44 (1965). The mortgagee's rights may, however, be extinguished if the mortgage debt has been extinguished at the foreclosure sale. *National Union Fire Ins. Co. v. Davis,* 54 Tenn.App. at 260–61, 389 S.W.2d at 943–44.

The rule recognized in *National Union Fire Ins. Co. v. Davis* is in accord with the majority rule that a mortgagee may recover as a loss payee under an insurance policy covering the mortgaged property only to the extent that it remains a creditor following the foreclosure sale. *Calvert Fire Ins. Co. v. Environs Dev. Corp.,* 601 F.2d 851, 856 (5th Cir.1979) (applying Georgia law); *Nationwide Mut. Fire Ins. Co. v. Wilborn,* 291 Ala. 193, 279 So.2d 460, 463–64 (1973); *Imperial Mortgage Corp. v. Travelers Indem. Co.,* 43 Colo.App. 74, 599 P.2d 276, 278 (1979); *Burritt Mut. Sav. Bank v. Transamerica Ins. Co.,* 180 Conn. 71, 428 A.2d 333, 338 (1980); *Partel, Inc. v. Harris Trust & Sav. Bank,* 106 Ill.App.3d 962, 63 Ill.Dec. 303, 305–06, 437 N.E.2d 1225, 1227–28 (1982); and *Smith v. General Mortgage Corp.,* 402 Mich. 125, 261 N.W.2d 710, 712 (1978).

Foreclosure proceedings extinguish the mortgage debt when the proceeds of the foreclosure sale equal or exceed the debt and related costs. Accordingly, a mortgagee who bids in the full amount of the debt at the foreclosure sale accepts the property itself in full payment of the underlying debt, while a mortgagee who bids in less than the full amount of the debt retains its status as a creditor with regard to the deficiency. *Farmers & Merchants Sav. Bank v. Farm Bureau Mut. Ins. Co.,* 405 N.W.2d 834, 837 (Iowa 1987); *Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.,* 28 N.Y.2d 332, 321 N.Y.S.2d 862, 864–65, 270 N.E.2d 694, 696 (1971).

Property should bring its fair market value at foreclosure sales. Mortgagees who bid in the property for the full amount of the debt must have determined that the property was worth at least as much as the debt since reasonably prudent lenders would not purchase property for more than its fair market value and would not imprudently relinquish their right to pursue a deficiency against the mortgagor. Allowing mortgagees who purchase property for the full amount of the debt to assert that the property is actually worth less than their bid undermines the integrity of the foreclosure sale itself and creates the possibility of fraud or of a double recovery when the mortgagee seeks the proceeds of any insurance on the property. *Whitestone Sav. & Loan Ass'n v. Allstate Ins. Co.,* 321 N.Y.S.2d at 865–67, 270 N.E.2d at 697.

First Investment does not challenge the validity of the rule that the complete satisfaction of a mortgage debt terminates a mortgagee's rights as a loss payee under insurance policies covering the property. It asserts that HUD's decision to deduct the estimated repair costs from the mortgage insurance proceeds provides extenuating circumstances warranting an exception to the general rule. We do not agree that the fact that First Investment's loan was federally insured provides a basis for departing from the general rule. Nothing in the HUD regulations required First Investment to bid in the property at the foreclosure sale for more

than the property's fair market value following the fire.

The HUD regulations required First Investment to institute foreclosure proceedings within nine months after the Powers defaulted on their loan. *See* 24 C.F.R. § 203.355(a) (1993). If the Federal Housing Commissioner had provided First Investment with notice of its adjusted fair market value for the property, the regulations would have required First Investment to tender a bid at the foreclosure sale in the amount of the Commissioner's fair market value. *See* 24 C.F.R. § 203.368(g)(1) (1993). The regulations did not, however, require First Investment to bid in the property for the full amount of the loan when this amount exceeded the fair market value for the property after the fire.

First Investment is a commercially sophisticated lender who is presumed to be aware of the HUD regulations as well as the legal principles affecting its status as a loss payee under a mortgagor's insurance policy. The HUD regulations would have permitted First Investment to be made whole if the property had been sold at foreclosure for its actual fair market value which, following the fire, was less than the amount of the mortgage loan.[2] First Investment exceeded its obligations under the HUD regulations when it bid in the property for more than its fair market value. Its decision, however, was a voluntary one and cannot provide the basis for requiring Allstate to pay for an interest that was extinguished as a matter of law when the foreclosure sale proceeds exceeded the amount of the mortgage debt.

## IV.

■ First Investment finally argues that it should be permitted to step into the shoes of the Powers because it purchased the property at the foreclosure sale. We do not agree. First Investment was acting for its own benefit when it foreclosed on the property. It had no obligation to purchase the property at

foreclosure and thus is not now entitled to be subrogated to the Powers' rights under their landlord's package policy.

Allstate's liability must be measured by the terms of its insurance policy because it cannot be held responsible for risks that it did not contractually assume. Even though the insurance policy named First Investment as a loss payee, Allstate only undertook to insure the named mortgagees for covered losses "to the extent of their interest and in the order of precedence." First Investment's insurable interest consisted of its mortgage loan which was extinguished as a matter of law at the foreclosure sale. Accordingly, Allstate's obligation to First Investment ceased when First Investment bid in the property for the full amount of the debt.

First Investment's present predicament is of its own making. We will not relieve it from its own mistake by expanding Allstate's contractual liability under its landlord's package policy or by disturbing well-settled principles of insurance and contract law. Nothing in the HUD regulations required First Investment to bid in the property for more than it was worth, thus First Investment should be treated no differently than any other mortgagee whose mortgage was not federally insured.

## V.

We reverse the summary judgment in favor of First Investment and remand the case to the trial court for an entry of an order granting *Allstate's motion for summary judgment* and dismissing First Investment's complaint. We also tax the costs of this appeal to First Investment Company for which execution, if necessary, may issue.

LEWIS and CANTRELL, JJ., concur.

---

2. The HUD insurance would have covered any deficiency if a third party had purchased the property at foreclosure for less than the outstanding indebtedness. Furthermore, *HUD* would also have paid the full amount of the mortgage if First Investment had purchased the property and repaired it before conveying it to

HUD. Finally, HUD would have paid First Investment *if it had not repaired the property* before conveying it but would have reduced its payment either by the expected repair costs or by the other insurance proceeds First Investment might have received. *See* 24 C.F.R. § 203.379(a) (1993).