David N. LEE, Plaintiff–Appellant,

v.

**ROYAL INDEMNITY COMPANY,**
Defendant–Appellee.

No. 95–6699.

United States Court of Appeals,
Sixth Circuit.

March 11, 1997.

Brian O. Bowhan (argued and briefed), Charles C. Morrow Associates, Nashville, TN, for plaintiff–appellant.

John W. Wagster (argued and briefed), Hollins, Wagster & Yarbrough, Nashville, TN, for defendant–appellee.

Thomas N. Bateman, Clarksville, TN, for intervenor–appellee.

Before: CONTIE, RYAN, and BOGGS, Circuit Judges.

BOGGS, J., delivered the opinion of the court, in which RYAN, J., joined. CONTIE, J. (at 657–58), delivered a separate dissenting opinion.

BOGGS, Circuit Judge.

David Lee's home in Dickson County, Tennessee was destroyed by fire, while insured by Royal Indemnity Co. ("Royal Indemnity"). Royal Indemnity refused to pay and Lee sued to collect on the insurance policy. A jury returned a verdict in favor of Lee in the amount of $157,500. After judgment was entered for Lee, Royal Indemnity moved to set off the amount of an extinguished mortgage. The district court granted the motion because the court concluded that allowing the entire judgment to stand would unjustly enrich Lee. We reverse. We believe that the full amount of the judgment accurately reflects the loss to Lee and does not result in a double recovery or unjust enrichment. In fact, to uphold the district court order would allow Royal Indemnity to escape paying anyone for most of the value of the insurance policy on the dwelling, a result that is clearly at odds with the fact that premiums were paid to insure the full value of the dwelling.

I

A fire destroyed Lee's home in Dickson County, Tennessee on February 9, 1992, along with most of his personal belongings. At the time of the fire, Lee's home was subject to a mortgage held by National Mort-

gage Company ("National Mortgage") in the amount of $75,284.65. Also in effect at the time of the fire was an insurance policy issued by Royal Indemnity on the home. The policy was a "valued policy," which valued the mortgaged "dwelling" at $90,000. Royal Indemnity refused to pay on the policy because it believed that the fire had been set either by Lee or someone under his direction.

Following the fire, Lee stopped making mortgage payments. National Mortgage demanded that Royal Indemnity pay off the mortgage pursuant to the insurance contract. But, before any payment could be made, National Mortgage foreclosed on the property and erroneously bid it in for the full amount of the mortgage. This resulted in the extinguishment of the mortgage. About two years later, National Mortgage sued Lee, seeking to void the foreclosure sale. The Chancery Court of Dickson County, Tennessee, granted Lee's motion to dismiss for failure to state a claim. The court found that National Mortgage was entirely responsible for the mistake and that Lee had had nothing to do with National Mortgage's actions.

In the meantime, Lee sued Royal Indemnity to recover the losses he sustained as a result of the fire. Although Royal Indemnity raised the defense of arson, the jury returned a verdict in favor of Lee and judgment was entered in the amount of $157,500. After judgment was entered, Royal Indemnity sought to set off against the judgment the amount of the extinguished mortgage. Its motion was granted.

On appeal, Lee claims that the district court erred in granting Royal Indemnity's motion for a set off because, pursuant to the terms of the policy, he was entitled to be paid the full amount of the policy, including the

$90,000 jury award for the loss of the dwelling. We agree.

## II

Initially we note that the issue of whether a defendant is entitled to a set off is a question of law, and thus, we review the district court's order *de novo*. *See Benson v. Tennessee Valley Elec. Coop.*, 868 S.W.2d 630 (Tenn.Ct.App.1993).

Under the insurance contract, it is undisputed that National Mortgage would have had the right to receive payment from the insurer for the amount of its interest, i.e., the mortgage, were it not for the foreclosure sale.[1] However, due to its error in bidding the full amount of the mortgage at the foreclosure sale, it no longer has any interest under the policy. *See First Inv. Co. v. Allstate Ins. Co.*, 917 S.W.2d 229, 230 (Tenn.Ct. App.1994) ("mortgagee had no insurable interest under the mortgagor's insurance policy after it purchased the property at the foreclosure sale for the remaining amount of the mortgage"); *Benton Banking Co. v. Tennessee Farmers Mut. Ins. Co.*, 906 S.W.2d 436, 439 (Tenn.1995) ("it is well settled that full or partial extinguishment of the debt itself, whether prior to the loss or subsequent to the loss, precludes to the extent thereof, any recovery by the loss-payable mortgagee"). Thus, the issue becomes how to measure Lee's loss and the insurer's obligation, given National Mortgage's error.

Royal Indemnity claims that the definition of insurance[2] mandates that the measure of the loss be determined by the interest Lee had in the property at the time of the fire, because otherwise, he would be collecting on a loss that did not occur since Lee no longer owes National Mortgage any money. We disagree. Royal Indemnity has simply

---

1. The insurance policy provided that "[i]f a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and [the insured], as interests appear." The policy named National Mortgage as the mortgagee under the policy.

2. Insurance has been defined as a contract by which one party, for an adequate consideration paid to him, undertakes to indemnify or guarantee the other against loss by certain specified

risks—an agreement wherein one becomes surety to another that the latter shall not suffer loss or damage upon the happening of certain contingencies, upon specified terms. *Commerce Title Guar. Co. v. United States*, 32 F.Supp. 73, 77 (W.D.Tenn.1940) (citation and internal quotation omitted), *aff'd*, 121 F.2d 452 (6th Cir.), *cert. denied*, 314 U.S. 657, 62 S.Ct. 110, 86 L.Ed. 526 (1941).

measured the loss in a manner most favorable to it. While this is a possible measure of the loss, it is not the only one. The loss can also be measured by the value of the property itself, which was $90,000 under the policy. We believe the second measure of the loss is more appropriate in this instance since the premiums Lee paid to Royal Indemnity reflect the $90,000 value for the dwelling. Moreover, the insurance policy provides for payoff "as interests appear." Since under the case law, National Mortgage no longer has any interest under the policy, its interest must necessarily revert to Lee, the holder of the policy.

We also disagree with Royal Indemnity's argument that *Benton Banking* supports its position that it was entitled to the set off. While some language in *Benton Banking* supports Royal Indemnity's position, the opinion as a whole does not. *Benton Banking* involved a suit brought by the mortgagee to recover proceeds of a fire insurance policy as loss payee. The Tennessee Supreme Court held that the mortgagee had no right to the proceeds because it had accepted a promissory note in satisfaction of the debt from the insured mortgagor's parent after the fire loss occurred. *Benton Banking*, 906 S.W.2d at 440.

The homeowners in *Benton Banking* had insured their home, listing the mortgagee as a loss payee under a provision in the insurance policy similar to the one at issue here.[3] Two days after a fire had damaged the home, the bank accepted a promissory noted signed by the insured mortgagor's father in satisfaction of the debt. The insurance company promptly issued a check to the homeowners for $12,351, the amount necessary to repair the damage to the home. The contractor they hired to perform the repairs, however, failed to complete the repairs even though he had received the bulk of the insurance proceeds to do the work. The remaining money was kept by the homeowners. Because the home was still in disrepair, Benton Banking filed a complaint in the Chancery Court asserting that the insurance company had to

pay it for the cost of repairing the home because it was the proper payee under the insurance policy. It argued that, although payment had been promptly made to the owners, the contractor had failed to restore the Bank's collateral and that, as a loss payee, the proceeds should have been paid to it.

The Tennessee Supreme Court rejected Benton Banking's claim, holding that Benton Banking had lost its rights under the contract when it had accepted a promissory note signed by the insured mortgagor's father in satisfaction of the debt. While the court stated that "[t]he rights of a losspayable mortgagee are determined as of the time of the loss," it held that "full or partial extinguishment of the debt itself, *whether prior to the loss or subsequent to the loss,* precludes to the extent thereof, any recovery by the loss-payable mortgagee for the plain and sole reason that the debt, itself, has been to that extent extinguished." *Id.* at 439 (emphasis added).

The Tennessee court stated that this rule was intended to prevent double recovery by the mortgagee and double payment by the insurer:

[This rule] is intended to prevent a mortgagee from receiving a double payment. The mortgagee's interest in the insurance proceeds is recognized as security for the payment of the debt. The insurance is an alternative source of payment and once the debt is paid by some other means, any right to the insurance is thereby extinguished. Equity requires that subsequent events, such as payment of the underlying debt, not be ignored when the court distributes the insurance proceeds.

*Ibid.* Royal Indemnity argues that the policy against double recovery expressed by the Tennessee court cannot apply simply to mortgagees, but must also apply to an insured whose mortgage has been extinguished as the result of a mortgagee's mistake. While this language in isolation could be read to support Royal Indemnity's position, the rest of the opinion does not. Rather, the opinion provides that once a mortgagee's in-

---

3. The insurance policy stated: "Loss shall be payable to any mortgagee named in the [policy], to the extent of their interests and in the order of precedence." *Benton Banking,* 906 S.W.2d at 437.

terest in the policy is extinguished through subsequent acts, any interest it had in the policy reverts back to the policy holder or other persons entitled to collect under the policy:

> The risk insured against is an impairment of the mortgaged property which adversely affects the mortgagee's ability to resort to the property as a source of repayment. Where the debt has been satisfied in full subsequent to the fire, neither reason nor precedent suggest recovery on the policy by the mortgagee. *The fact that a mortgagee may not recover on the insurance does not necessarily mean that the insurer will not be obligated to pay the mortgagor or other person entitled under the policy. Indeed, in the absence of defenses, it will be the mortgagor or his creditors who will recover.*

*Id.* at 439–40 (emphasis added) (citation omitted). Moreover, the court simply talks about a reallocation of the proceeds; nowhere does it suggest diminution of the total payout. *Id.* at 439 ("[e]quity requires that subsequent events, such as payment of the underlying debt, not be ignored when the court *distributes* the insurance proceeds"). Thus, reading the opinion as a whole, it is clear that the court did not intend to reduce the insurer's liability in any manner when it held that the mortgagee had no right to the insurance proceeds, in circumstances where the loss has already been paid to the owner.[4]

Similarly, we are unpersuaded by Royal Indemnity's argument that this case is similar to the situation in *MFA Mutual Insurance Co. v. Farmers and Merchants Insurance Co.*, 443 S.W.2d 220 (Mo.Ct.App.1969), where the contractor's obligation to rebuild relieved the homeowner's insurance company of its obligation to pay contribution for the fire loss. Royal Indemnity argues that, like the homeowner's insurance company, it is no longer obligated to pay Lee the full amount of the loss because the mortgage company had paid for a portion of the loss when it erroneously extinguished Lee's debt. Royal Indemnity misreads *MFA Mutual Insurance,* where the contractor's insurance company sought contribution from the homeowner's insurance carrier for one-half of a $15,000 claim that it had paid to the builder under a "builder's risk" policy. The case had nothing to do with the recovery of the insured as neither the builder nor the homeowners had any interest in the litigation since both had been fully compensated for their loss. The court simply held that the insurer of the contractor was not entitled to contribution because the policies were insuring different interests. *Id.* at 223. Therefore, the builder had no insured interest under the homeowner's policy. Here, by contrast, Royal Indemnity is not seeking contribution from another insurer. Rather, it seeks to reduce Lee's recovery and its total payout, something neither insurance company sought to do in *MFA Mutual Insurance.*

■ Royal Indemnity's next argument is equally unpersuasive. Citing *First Invest-*

---

4. Royal Indemnity argued at oral argument that the insurance company in *Benton Banking* did not have to pay the total amount of the loss because it only paid a portion of the loss to the insured. This, however, is at odds with the factual record in *Benton Banking.* The appellate court's decision in *Benton Banking* makes clear that the insurance company fully paid the homeowners for the total amount of their loss but that the repairs had simply not been made. Had Benton Banking been required to pay the mortgagee, it would have had to pay for the loss twice. *Benton Banking Co. v. Tennessee Farmers Mut. Ins. Co.,* No. 03A01–9310–CH–00374, 1994 WL 111436, *3 (Tenn.Ct.App. April 6, 1994) (finding the insurance company's argument that it would be required to pay the loss twice unpersuasive since the insurance company's failure to pay the mortgage company as a loss payee under the contract was of its own doing), *rev'd,* 906

S.W.2d 436 (1995). Thus, given the factual record in *Benton Banking,* it is clear that the Tennessee Supreme Court did not intend to reduce an insurance company's liability in the event a mortgagee's interest in the insurance policy no longer exists. Rather, the mortgagee's interest in the policy reverts back to the policy holder or other persons entitled to recover under the policy.

Moreover, it is of no import that Lee no longer has any interest in the actual property. Under the reasoning of *Benton Banking,* Lee, as policy holder, is the one entitled to the recovery. *See* 906 S.W.2d at 437–38 (In exchange for mortgagor's father's payment of the debt owed to the mortgagee, the homeowners transferred their interest in the property to him. Nevertheless, it was the homeowners who received the insurance proceeds for the full amount of their loss.).

*ment,* it argues that because the contractual rights of the parties are "fixed" at the time of the fire, any benefit resulting from a mortgagee's error inures to the insurance company. We initially note that Royal Indemnity's proposition that the rights of the parties are fixed at the time of the loss for time immemorial does not withstand the court's decision in *Benton Banking,* which makes clear that, although rights of the parties are determined as of the time of the loss, those rights can be changed by the actions of the parties subsequent to the loss. 906 S.W.2d at 439. Moreover, Royal Indemnity's argument falls of its own reasoning. If the parties' interests are forever fixed at the time of the loss, Royal Indemnity would still be liable to National Mortgage, a proposition that is not only counter to the holding in *Benton Banking,* but also contrary to Royal Indemnity's own position, which is that it is entitled to a reduction of the payout, not that it owes National Mortgage the money.

Second, *First Investment,* itself, does not support Royal Indemnity's proposition. The court in *First Investment* dealt only with the mortgagee's interest under a mortgagor's insurance policy after it purchased the property at a foreclosure sale for the remaining amount of the mortgage. While the facts are analogous to this case, in that the mortgagee extinguished the debt when it bid in the amount of the mortgage at a foreclosure sale, the court did not find that the insured homeowner's recovery was subsequently reduced by that amount. It also did not hold that the benefit from the mortgagee's mistake inured to the insurance company. Rather, it held that the insurance company's liability was measured by the terms of the insurance policy itself:

> Allstate's liability must be measured by the terms of its insurance policy because it cannot be held responsible for risks that it did not contractually assume. Even though the insurance policy named First Investment as a loss payee, Allstate only undertook to insure the named mortgagee for covered losses "to the extent of their interest and in the order of precedence." First Investment's insurable interest consisted of its mortgage loan which was extinguished as a matter of law

at the foreclosure sale. Accordingly, Allstate's obligation to First Investment ceased when First Investment bid in the property for the full amount of the debt.

*First Investment,* 917 S.W.2d at 232. In the instant case, Royal Indemnity's liability, as measured by the terms of the insurance policy, must include full recovery for the loss of the dwelling. To hold otherwise would mean that Royal Indemnity would not have to pay anyone for most of the value of the insurance policy on the dwelling, a result that is clearly at odds with the premiums paid to it. Those premiums took into account a potential $90,000 loss on the dwelling, not the mortgagee's error, and it is the potential $90,000 loss that Royal Indemnity undertook to insure.

■ Moreover, we are unconvinced that this case falls within the rule of law that limits an insured to one recovery where the insured has bought two insurance policies covering the same risk or property. *See, e.g., Sharpe v. Nationwide Mut. Fire Ins. Co.,* 62 N.C.App. 564, 302 S.E.2d 893, *cert. denied,* 309 N.C. 823, 310 S.E.2d 353 (1983) (the plaintiff, who had paid premiums on two policies covering the same property, was only entitled to recover the actual value of the property). Unlike the situation in *Sharpe,* where an insured seeks to recover twice because he has paid two premiums covering the same property, Lee is not trying to recover double the value of the property. Rather, he seeks to recover once for the value of the property under the policy.

■ Finally, Royal Indemnity argues that Lee would be unjustly enriched if the judgment is not offset by the amount of the extinguished mortgage because he would receive a double recovery. We fail to see any double recovery or unjust enrichment. In fact, should the district court's order be upheld, we believe that Royal Indemnity would be the one unjustly enriched.

First, the premiums Lee paid were based on a "valued policy," valuing the dwelling at $90,000. Royal Indemnity, a commercially sophisticated insurer, presumably determined the premiums based on the likelihood of having to pay for a loss on the dwelling. And it is unlikely, given the equally sophisticated nature of mortgagees, that the actuaries' tables used to determine premiums took

into account the possibility that a bank, through its own error, would extinguish the debt. Thus, to allow the judgment to be offset by the amount of the extinguished mortgage would be to allow a recovery at odds with the premiums paid to Royal Indemnity.

Second, this situation is analogous to situations where the collateral source doctrine applies. Under this doctrine, a plaintiff's recovery is not reduced even though he has been compensated for the loss through another source.[5] *See Benson*, 868 S.W.2d at 630. While the collateral source doctrine normally applies in personal injury cases, such as when a tort victim recovers medical expenses from the defendant even though someone else, such as a rich uncle, has paid the medical bills, we believe the doctrine is helpful to explain why Lee would not be unjustly enriched.

■ The present case is really not much different from the situation where the rich uncle pays off the plaintiff's medical bills because, like the plaintiff in that situation, Lee has been fortuitously benefited by the mortgagee, albeit through error and not generosity. In the rich uncle case, it certainly cannot be claimed that the rich uncle intended to benefit the defendant. Likewise, in this case, there is no evidence to suggest that the mortgagee intended to benefit Royal Indemnity. Perhaps this case is more analogous to a situation where the insured offers a painting, which the mortgagee erroneously believed to be a Van Gogh, to satisfy the mortgage, and after the debt has been extinguished, the mortgagee finds out that the painting is really a Van Nichts, but the result is the same. There is simply no nexus between the mortgagee's error and Royal Indemnity's liability, and any unjust enrichment must be measured as between the mortgagee and the insured, not the insurer and the insured. To hold otherwise would be to place Royal Indemnity in the shoes of National Mortgage,[6] something for which there is no reason and which the Tennessee courts do not allow. *See Benson*, 868 S.W.2d at 640 (plaintiff recovers the full amount of the judgment on a products liability claim, even though already paid for his medical expenses and lost earning capacity through his employer's worker's compensation insurance. Defendants could not place themselves in the position of the plaintiff's employer or its worker's compensation insurance carrier, who had waived their subrogation rights).

### III

As discussed above, the district court erred in offsetting Lee's recovery by the amount of the extinguished debt. Therefore, we **REVERSE** the district court's order granting Royal Indemnity's motion for an offset and **REMAND** the case to the district court to enter judgment for the full amount of the jury award.

CONTIE, Circuit Judge, dissenting.

The majority concludes that Lee is entitled to collect $75,284.65 from the insurer, Royal Indemnity. Because Lee's $75,284.65 mortgage debt was inadvertently extinguished by

---

5. We recognize that the Tennessee Legislature has abolished the collateral source doctrine in medical malpractice suits. Tenn.Code.Ann. § 29–26–119 (1980). However, this section has been strictly construed because it abrogates the common law. *Steele v. Ft. Sanders Anesthesia Group*, 897 S.W.2d 270, 282 (Tenn.Ct.App.1994). It, for example, has not been applied to products liability cases. *See Benson*, 868 S.W.2d at 640. In addition, we do not hold that the collateral source doctrine applies in this situation. Rather, we use the doctrine simply to illustrate that a homeowner is not unjustly enriched where he has paid premiums on a homeowner's insurance policy based on a certain value for the home, but due to a mortgagee's mistake, the insured no longer owes any money to the mortgagee.

6. *Cf.* The traditional tale of the two *schnorrers* (beggars):

For several years, two brothers had presented themselves at the home of Rothschild once a month and each had been given 100 marks. Then, one dies, so the survivor made the usual call alone.

The Keeper of the Rothschild funds handed him the usual 100 marks.

"But, you've made a mistake!" the *schnorrer* protested. "I should get 200 marks, 100 for my brother."

"No," said the treasurer, "your brother is dead. This is your hundred."

"What do you mean?" The *schnorrer* drew himself up indignantly. "Am I my brother's heir ... or is Rothschild?"

*A Treasury of Jewish Folklore* 395 (Nathan Ausbel ed., Crown 1948).

National Mortgage, Lee's recovery of the insurance proceeds will result in a double recovery and Lee's unjust enrichment.

In *Benton Banking Co. v. Tennessee Farmers Mut. Ins. Co.,* 906 S.W.2d 436 (Tenn.1995), the Tennessee Supreme Court held that "the rights of a loss payable mortgagee are determined *at the time of the loss.*" *Id.* at 438 (emphasis added) (citation omitted). In this action, National Mortgage suffered the $75,284.65 loss because it held an insured interest in Lee's property to the extent of Lee's outstanding debt. Accordingly, National Mortgage was entitled to recover the loss from Royal Indemnity at the time of the loss. Though National Mortgage subsequently lost its right to the insurance proceeds when it mistakenly bid the property in for the full amount of the debt, National Mortgage undeniably suffered the loss in this action. Accordingly, Lee is not entitled to the insurance money.

Simply stated, Lee is now $75,284.65 wealthier than he would have been if his house hadn't burned down because the majority transformed his $75,284.65 debt into a $75,284.65 windfall. Because Tennessee law does not support this outcome, I would **AFFIRM** the district court.