IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 15, 2012 Session

## GREENBANK v. STERLING VENTURES, L.L.C., ET AL.

### Direct Appeal from the Chancery Court for Williamson County
No. 39897      Timothy L. Easter, Chancellor

### No. M2012-01312-COA-R3-CV - Filed December 7, 2012

After the property at issue was sold at a foreclosure sale, Appellee Bank filed the instant action seeking a deficiency judgment against Appellants. The Bank subsequently moved for summary judgment on the basis of the statutory presumption that the foreclosure sale price was the fair market value of the property at the time of purchase. Tenn. Code Ann. §35-5-118(b). Appellants objected, asserting that, because the foreclosure sale price was less than the appraised value of the property, the sale was commercially unreasonable. The trial court granted the Bank's motion, finding that Appellants failed to meet their burden to show, by a preponderance of the evidence, that the foreclosure sale price was "materially less" than the fair market value of the property at the time of foreclosure. Tenn. Code Ann. §35-5-118(c). Discerning no error, we affirm.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Robert J. Notestine, III, and W. H. Stephenson, II, Nashville, Tennessee, for the appellants, Sterling Ventures, L.L.C., Charles F. Caudell, III, and James C. Woodard, II.

David M. Anthony, C. Tucker Herndon, and Sean C. Kirk, Nashville, Tennessee, for the appellee, Capital Bank, N.A., Successor by Merger to GreenBank.

### OPINION

On September 25, 2007, Sterling Ventures, by and through Charles F. Caudell, III and James C. Woodard, II (together with Sterling Ventures and Mr. Caudell, "Appellants"), in their representative capacities, executed a Universal Note and Security Agreement, as

modified by various Commercial Debt Modification Agreements and subsequent Universal Notes and Security Agreements (collectively the "Note"). [1] The Note, which was executed in favor of Appellee GreenBank, was in the maximum principal amount of $792,000.00.[2] In connection with the Note, Sterling Ventures, by and through Messrs. Woodard and Caudell, in their representative capacities, executed a Commercial Loan Agreement, dated September 24, 2007, in the maximum principal amount of $792,000.00. This Commercial Loan Agreement, executed in favor of GreenBank, was subsequently modified and amended by a second Commercial Loan Agreement dated March 30, 2010 (the "Loan Agreement"). In addition, both Mr. Caudell and Mr. Woodard executed separate Guaranty agreements, both dated July 31, 2007, indicating that they would, individually, repay any and all debts owed by Sterling Ventures to GreenBank.

Sterling Ventures defaulted in making payments to GreenBank under the Note. As a result, GreenBank declared a default on the Note by letter of February 7, 2011. The letter states that, "[a]s of February 3, 2011, the unpaid principal balance . . . was $792,000.00; the accrued interest was $8,316.00; and late charges and other fees were $888.85 for a total balance of $801,204.85." The letter accelerated and demanded payment of all amounts due under the Note pursuant to the Loan Agreement. On March 22, 2011, the property securing the Note was sold at a foreclosure sale.[3] GreenBank, the sole bidder, purchased the property for $667,000.00.

On June 29, 2011, GreenBank filed suit, seeking monetary judgment against the Appellants, jointly and severally, for the deficiency balance owed under the Note. At the time the complaint was filed, and as averred therein, the Note had an unpaid balance of $146,849.59, which included accrued and unpaid interest and late charges through June 29, 2011. The complaint, however, notes that interest continues to accrue pursuant to the Note.

On August 5, 2011, Appellants filed a joint answer, in which they (as stated in their appellate brief) "basically admitt[ed] to the factual allegations of the complaint." However, the answer raises the following affirmative defenses: (1) GreenBank fails to state a claim upon which relief can be granted; (2) GreenBank, through its agents and representatives, acted in bad faith; (3) GreenBank breached its obligation to mitigate damages; and (4)

---

[1] According to the complaint, Mr. Caudell is the Secretary of Sterling Ventures and Mr. Woodard is its Chief Manager.

[2] As noted in the trial court's order granting summary judgment, GreenBank is "now known as Capital Bank, N.A., successor by merger to GreenBank."

[3] Appellants did not allege, at the hearing or on appeal, that the foreclosure sale itself was fraudulently conducted or irregular in any manner

GreenBank's foreclosure was commercially unreasonable.

On September 22, 2011, GreenBank moved for summary judgment. In support of its motion, GreenBank also filed: (1) a Tennessee Rule of Civil Procedure 56.03 statement of undisputed material facts; (2) the September 21, 2011 Affidavit of Lonnie Malone, Senior Vice President of GreenBank; (3) the September 22, 2011 Affidavit of David Anthony, GreenBank's attorney; and (4) a memorandum of law in support of the motion. The motion for summary judgment avers that, as of the date of filing, the total debt owed by Appellants was $153,221.22. The motion for summary judgment further states that the balance on the Note accrues interest at a rate of $20.76 *per diem*.

The motion for summary judgment was initially set for hearing on October 24, 2011; however, the hearing was continued twice upon Appellants' motions. The hearing on the motion for summary judgment was ultimately set for January 18, 2012. In its December 7, 2011 order, which sets the January 18, 2012 hearing, the trial court specifically states that Appellants' "depositions must be conducted on or before December 13 or 14, 2011." During the pendency, on December 13, 2011, Appellants deposed Mr. Malone, along with Robert Cullen Ashworth, another GreenBank employee. One day before the hearing, on January 17, 2012, Appellants filed their responses to GreenBank's Rule 56.03 statement of undisputed material facts. As relevant to the instant appeal, Appellants' responses dispute: (1) the remaining balance due and owing under the Note, which GreenBank states is $151,616.14; (2) the interest accrual rate on the Note, which GreenBank states is $20.76 *per diem*; (3) GreenBank's assertion that Appellants are due no other credits on the Note, as all collateral has been liquidated; and (4) the specific amounts of principal and interest due on the Note as set out by GreenBank. To all of the statements by GreenBank, Appellants assert that there is a dispute of fact and further state, in each response, that:

> In support of the dispute hereof, which is a question of fact to be determined at trial, [Appellants] would show [GreenBank] foreclosed on the secured parcel of real estate. The appraised value for the real estate was $735,000.00. At the foreclosure sale, [GreenBank] bid and purchased the property for $667,000.00 which was commercially unreasonable under the circumstances. [Appellants] are therefore entitled to additional credit.[4]

Also in support of their contention that there are material facts in dispute, Appellants rely upon the Affidavit of Charles F. Caudell, III, which was also filed on January 17, 2012.

---

[4] The record indicates that the actual foreclosure sale price was $667,400.00.

In his Affidavit, Mr. Caudell states, in relevant part, that:

> 6. In November 2010, [Appellants] experienced financial difficulties with this particular parcel of real estate [i.e., the parcel securing the Note at issue here]. I consequently visited with the bank and advised it that the December payment would be the last one I would be able to make, and I suggested a meeting to hopefully resolve the matter.
>
> 7. During this period of time, there was interest in the property and potential buyers. Matter of fact, a lump-sum cash amount of $675,000.00 was offered, and [GreenBank] summarily rejected it.[5]
>
> 8. During a January meeting I had with [GreenBank], I was told that their appraisal value for the parcel of real estate was $785,000.00.
>
> 9. During the time of the foreclosure, the total tax appraisal by Williamson County, Tennessee, amounted to $849,000.00.[6]
>
> 10. Immediately prior to the foreclosure that occurred on March 31, 2011, [GreenBank] had an offer to purchase the parcel of real estate "as is" in the amount of $735,000.00. The only contingency for this transaction was additional time for the purchaser to make the necessary arrangements for purchase.
>
> \*                           \*                           \*
>
> 12. As a licensed real estate principal broker who is familiar with this area, i.e., Williamson County, and as an owner of the property, I place a value on the property at the time [of] the foreclosure to be at least $750,000.00.

As noted above, Appellants conducted their own deposition of Lonnie Malone, a Senior Vice President of GreenBank. This Affidavit was filed by Appellants on January 18,

---

[5] There is no documentation in the record concerning the alleged $675,000.00 offer.

[6] No tax statements or records are included in this record.

2012 and provides, in relevant part, as follows:

> 5. As an officer of GreenBank . . . I personally met with the [Appellants] and discussed the value of the property [securing the Note] . . . and discussed multiple issues relating to construction and completion, proposals and values of the partially completed house. At the time of the meeting, the house was eighty-five percent (85%) complete and the house had substantial damage, including multiple water leaks, did not contain insulation and the property had drainage and grading issues.
>
> 6. [GreenBank] obtained an appraisal conducted by Tracey Duke on March 22, 2011 evidencing the appraised value of the property . . . to be $710,000.00 as a current market value, subject to a liquidation value stated to be $581,000.00 . [GreenBank] relied upon this appraisal at the foreclosure sale and entered the entry bid of $667,400.00 and there were no other individuals or entities interested in bidding any additional monies.[7]
>
> 7. On April 27, 2011, [GreenBank] received an offer to purchase the property . . . as evidenced in the attached Special Warranty Deed, Exhibit B. [GreenBank] agreed to sell the property for $632,000.00 as the house needed additional work to be completed. As a result of the sale of the property, [GreenBank] incurred an additional loss.

Following the January 18, 2012 hearing, the trial court granted summary judgment in favor of GreenBank by order of January 31, 2012. The order provides, in pertinent part, as follows:

> 3. After considering all pleadings filed in support of [GreenBank's] Motion for Summary Judgment, [Appellants'] response, and hearing on January 18, 2012, this Court finds the [Appellants] failed to overcome the presumption that the foreclosure sale price of the property bid by [GreenBank] is equal to the fair market value and the Motion is well taken with regard to [GreenBank's] claims against [Appellants] regarding

---

[7] A copy of Mr. Duke's appraisal was attached as Exhibit A to Mr. Malone's Affidavit.

the amounts owed under the [Note and Guaranties].

> 4. The Court finds there are no genuine issues of material fact in dispute regarding [GreenBank's] allegations regarding the Note and the Guaranties and that [GreenBank] is entitled to Summary Judgment as a matter of law on its claims for the unpaid amounts due to [GreenBank] in the total amount of $160,032.72. This Summary Judgment amount consists of unpaid balance of $151,616.14, plus interest of $2,470.34 (from September 22, 2011 to the January 18, 2012 hearing date), and attorney's fees and expenses of $5,946.24 (from September 22, 2011 to the January 18, 2012 hearing date) incurred by [GreenBank's] attorneys.

On March 1, 2012, Appellants filed a motion to reconsider, to alter or amend and/or for other appropriate relief. As is relevant to the instant appeal. Appellants argue that the trial court erred in finding that Appellants had failed to overcome the presumption that the foreclosure sale price of the property is equal to its fair market value. GreenBank filed a reply in opposition to Appellants' motion to reconsider. The motion was ultimately denied by order of May 9, 2012.

Appellants appeal. The dispositive issue is: Whether the trial court erred in granting summary judgment in favor of GreenBank?

Because this case was adjudicated by summary judgment, we first note that a trial court's decision on a motion for summary judgment presents a question of law. Our review is, therefore, *de novo* with no presumption of correctness afforded to the trial court's determination. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn.1997). "This Court must make a fresh determination that the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied." ***Mathews Partners, L.L.C. v. Lemme***, No. M2008–01036–COA–R3–CV, 2009 WL 3172134, at *3 (Tenn. Ct. App.2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50–51 (Tenn.1997)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. ***Hannan v. Alltel Publ'g Co.***, 270 S.W.3d 1, 8–9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or

shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn.1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134, at *3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary [j]udgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al.*, No. E2009–01354–COA–R3–CV, 2010 WL 845390, at *3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn.1995)). However, if there is any uncertainty concerning a material fact, then summary judgment is not the appropriate disposition. As stated by our Supreme Court in *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn.1975):

> The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He [or she] is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues.

*Id*. at 24–25.

In Tennessee, the holder of a note has the right to pursue foreclosure of the corresponding security instrument. *See **Frame v. Tabler***, 52 S.W. 1014 (Tenn. Ct. App. 1898); ***Perrin v. Trimble***, 48 S.W. 126 (Tenn. Ct. App.1898). Generally, when real property has been foreclosed upon and the foreclosure does not satisfy the amount of the financial obligation for which the property was security, the foreclosing party is entitled to a deficiency judgment against the party liable on the underlying obligation. *See* Restatement (Third) of Property (Mortgages) § 8.4 (1997); *see also **Lost Mountain Dev. Co. v. King***, No. M2004–02663–COA–R3–CV, 2006 WL 3740791, at *8 (Tenn. Ct. App. Dec.19, 2006). "Foreclosure proceedings extinguish the mortgage debt when the proceeds of the foreclosure sale equal or exceed the debt and related costs. Accordingly, a mortgagee who bids in the full amount of the debt at the foreclosure sale accepts the property itself in full payment of the underlying debt, while a mortgagee who bids in less than the full amount of the debt retains its status as a creditor with regard to the deficiency." ***First Inv. Co. v. Allstate Ins. Co.***, 917 S.W.2d 229, 231 (Tenn. Ct. App. 1994).

Under certain circumstances, however, the party to be held liable may properly avoid or reduce the amount of the deficiency judgment to be awarded by challenging the foreclosure sale. ***Duke v. Daniels***, 660 S.W.2d 793, 795 (Tenn. Ct. App. 1983). In a suit for a deficiency judgment, Tennessee courts apply Tennessee Code Annotated Section 35-5-118, which became effective (in its present form) on September 1, 2010.[8] The statute provides, in relevant part, as follows:

> (a) In an action brought by a creditor to recover a balance still owing on an indebtedness after a trustee's or foreclosure sale of real property secured by a deed of trust or mortgage, the creditor shall be entitled to a deficiency judgment in an amount sufficient to satisfy fully the indebtedness.
>
> (b) In all such actions, absent a showing of fraud, collusion, misconduct, or irregularity in the sale process, the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair

---

[8] 2010 Pub.Acts, ch. 1001, § 2, provides:

> This act shall take effect on September 1, 2010, the public welfare requiring it and shall apply to all trustee or foreclosure sales of real property secured by a deed of trust for which the first foreclosure publication is given on or after such date.

market value of the property at the time of the sale. The creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale.

(c) To overcome the presumption set forth in subsection (b), the debtor must prove by a preponderance of the evidence that the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale. If the debtor overcomes the presumption, the deficiency shall be the total amount of the indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale as determined by the court.

Pursuant to the statute, absent fraud, collusion, misconduct, or irregularity in the foreclosure sale (which are not averred in the instant case), "the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale." Tenn. Code Ann. § 35–5–118(b). In such cases, "[t]he creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale." Tenn. Code Ann. § 35–5–118(b); *see **Duke v. Daniels***, 660 S.W.2d 793, 795 (Tenn. Ct. App. 1983). If a defendant raises inadequacy of the foreclosure price as a defense to the deficiency claim, the defendant "must prove by a preponderance of the evidence that the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale." Tenn. Code Ann. § 35–5–118(c); *see also **Lost Mountain Dev. Co. v. King***, No. M2004–02663–COA–R3–CV, 2006 WL 3740791, at *8 (Tenn. Ct. App. Dec. 19, 2006) ("[T]he issue in deficiency actions is the fair market value of the property at the time it was sold."). Prior to the September 1, 2010 amendment to Tennessee Code Annotated Section 35-5-118, the debtor was required to show, by a preponderance of the evidence, that the foreclosure sale price was "grossly inadequate" as compared to the fair market value of the property. Following the amendment, the debtor's standard was changed from "grossly inadequate" to "materially less" than the fair market value. In applying the amended Tennessee Code Annotated Section 35-5-118 to this case, we must apply the most basic principle of statutory construction, which is to ascertain and give effect to legislative intent without broadening the statute beyond its intended scope. *See **State v. Sherman***, 266 S.W.3d 395, 401 (Tenn. 2008).

Turning to the record, it is undisputed that the foreclosure sale price of the disputed property was $667,400.00. Appellants contend that the fair market value of the property was between $735,000.00 and $750,000.00. Using the highest fair market value proposed by

Appellants (i.e., $750,000.00), as we must do at the summary judgment stage, $667,400.00 represents approximately 89% of the highest fair market value proffered by Appellants. The question, then, is whether a foreclosure sale price of 89% of the fair market value is "materially less" than the fair market value of the property at issue. If not, then the trial court correctly granted summary judgment to GreenBank upon its finding that Appellants had not overcome the *prima facie* presumption "that the sale price of the property is equal to the fair market value of the property at the time of the sale." Tenn. Code Ann. §35-5-118(b).

In order to determine whether GreenBank was entitled to summary judgment in this case, we must determine whether the foreclosure price in this case was "materially less" than the appraised value of the property. Tenn. Code Ann. §35-5-118(c). Thus, the issue in this case requires us to interpret a statute. In determining the proper interpretation to be given to a statute, we must employ the rules of statutory construction. The Tennessee Supreme Court recently reiterated the "familiar rules," stating:

> Our role is to determine legislative intent and to effectuate legislative purpose. [*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)]; *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. *See Lee Med., Inc.*, 312 S.W.3d at 526; *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009); *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. *See Lee Med., Inc.*, 312 S.W.3d at 527; *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009). When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. *Lee Med., Inc.*, 312 S.W.3d at 527–28. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions." *Id.* at 528.

*Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). The term "materially less" is not defined in Tennessee Code Annotated Section 35-5-118, nor has any Tennessee case ever specifically defined it. Where appropriate, courts may utilize dictionary definitions in

interpreting statutes. *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010) (quoting *State v. Williams*, 690 S.W.2d 517, 529 (Tenn. 1985)). However, the dictionary definition is not determinative in this case. Bryan Garner's A Dictionary of Modern Legal Usage states that the term "materially" is often "used in the sense 'significant.'" Bryan A. Garner, A Dictionary of Modern Legal Usage 551 (2d ed. 1995). Thus, according to the dictionary definition, a foreclosure sale price will only be deemed "materially less" when the difference in price is "significant." While the dictionary definition is helpful, it fails to answer the question of when a foreclosure sale price will be deemed "materially" or "significantly" less than the fair market value of a property. Consequently, in order to determine the legislative intent regarding the adoption of the "materially less" language, we look to the legislative history of the statute.

In discussing HB 3057 (SB 3039), on April 26, 2010, Representative Vance Dennis, the Sponsor of this Bill in the Tennessee House of Representatives, states, in response to a question posed by Representative Johnnie Turner:

> Right now [i.e., before the amendment passes], after a foreclosure, say, a property that you owed $100,000 on was foreclosed and it was sold for $50,000, you've got a $50,000 shortfall in what you owe the bank. Right now, if you're the debtor, [and] you can prove that the $50,000 was "grossly inadequate" from the actual value of the property, then the court can allow an offset [of] that $50,000. This Bill actually pulls back from that standard a little bit and creates a rebuttable presumption that you've got to show a "material difference" instead of "gross inadequacy." So, the bottom line is that it is a little bit more consumer friendly in that regard, because, if the consumer can show that there was a "material difference" between what the house sold for at the foreclosure sale and the actual value of the house, then the court can reduce the judgment by that amount.

Representative Henry Fincher goes on to explain:

> I just wanted to speak a little bit on the Legislative history [] of this [Bill]. The [proposed] Legislation requires a "material difference" between the sale price and the fair market value. That is the trigger in order for the court to review these [cases]. "Material" is a term used in a lot of different contexts: legal, court cases, accounting, [and] also in securities. My

-11-

understanding is that the term "material," in [the context of this Bill], is limited primarily with [sic] its relation to the property's value and the sale price at the foreclosure sale . . . . It's not intended to apply to any of these other contexts; it's the relationship between the sale price and the actual value of the property [at the time of foreclosure]. When we talk about fair market value, a lot of times we have appraisals that are used as the basis of making loans and valuing the property. They're used for tax purposes. A lot of times, our appraisers find different conclusions. The preference would be that we wouldn't just base this solely on one appraisal, but any appraisal that is offered for the court's decision would be available and could be considered by the court. And also, a lot of times properties in foreclosure are found to be in need of repair, or the projects may only be partially completed. The fair market value we are talking about in this context—that's the value of the property in the condition it's in at the time of the foreclosure.

Thereafter, Representative Dennis states that, although the burden of proof would remain on the debtor, the standard applied would change to "material difference," which is a lesser burden that the then-existing "gross inadequacy" standard.

Representative Mark Maddox then offers the following hypothetical: "A $100,000 loan [is] foreclosed. I owe $80,000 on the $100,000 house. [The] house sells for $25,000. What happens right now [i.e., before the amendment]?"

Representative Dennis responds:

Right now, if the bank chooses, it can sue you for the difference between $80,000 and $25,000 . . . . You technically owe them $55,000 . . . . If you can prove that the sale price was "grossly inadequate" right now, then the judge could determine what the fair market value is, and only give the bank a judgment for a lesser amount, if the fair market value was more . . . . [After the amendment passes,] if the debtor can prove that there was a "material difference" between the sale price and the fair market value, then—

Representative Maddox interjects:

-12-

Which is easy to do because I have an appraisal that says this house is worth $100,000 and it only sold for $25,000. So now [if the amendment passes] I've got an easier path to owe less money.

Representative Dennis explains:

It's not quite as easy as I think [Representative Maddox's comments] would indicate. The debtor is still going to have to prove a "material difference." A "material difference" is a pretty substantial difference as you know from your work on the child and family committee. If you want to change a child's custody arrangement, you've got to show a material change in circumstances—that is a significant change of circumstances. That's one of the reasons [why] we use "material," because there are several other issues and factors in the law where "material" is used. Our intent was to try to mirror those, to try to show that you have to show a pretty significant difference. It's not just bring in my appraisal because your bank is also going to have an appraisal. [And the bank has] the benefit of having a free and fair market auction, where they've got a price established at that auction. So, the burden is going to be still fairly significant for the debtor to overcome that burden.

Representative Phillip Johnson then asks Representative Dennis to explain the difference between "material" and "significant" in the context of the proposed amendment. To which Representative Dennis responds:

I don't think there's a whole lot of difference, myself. We use "material" in working with our bankers and financial institutions and with our home builders and other debtors. We were trying to find something that made the most sense, that was the most commonly used. In my mind, there's not a lot of difference between "significant" and "material". The problem is that each particular case is different. What may be material in one situation may not be material in another. What may be significant in one case may not be in another. But I believe the intent of the Legislation is that they are very similar. "Significant," "substantial," "material," they're all along the same lines. It's a very difficult burden for the debtor to

overcome . . . . You have to show a "strong" difference, a "material" difference.[9]

It is clear from the foregoing discussion that the Legislative intent in adopting the "materially less" standard was not to lessen the burden on the debtor so much as to negate the presumption that the sale price represents the fair market value. Rather, the term "materially less" still represents " a pretty substantial difference." As Representative Dennis further explains: "It's a very difficult burden for the debtor to overcome . . . . You have to show a "strong" difference, a "material" difference."

Since the amendment to Tennessee Code Annotated Section 35-5-118 went into effect, only one Tennessee case has analyzed the statute. In *State of Franklin Bank v. Riggs*, No. E2010-01505-COA-R3-CV, 2011 WL 5090888 (Tenn. Ct. App. Oct. 27, 2011), this Court affirmed the default judgment in favor of Appellee/bank, finding that property owners did not present sufficient evidence to show that they had a meritorious defense because the evidence submitted by the property owners failed to overcome the Tennessee Code Annotated Section 35-5-118(b) presumption. In doing so, we noted that the "[t]he current appraisal valued the property between $500,000 and $700,000, and the Bank purchased the property [at foreclosure] for $600,000." *Id*. at *6. Taking the highest appraised value of $700,000.00, the $600,000.00 foreclosure sale price in *Riggs* is approximately 86% of the fair market value. While the Court in *Riggs* did not specifically state that a foreclosure sale price, realizing 86% of the appraised value of the home, necessitated a finding that the sale was commercially reasonable, the Court did conclude that, despite the difference between the foreclosure sale price and the appraised value, the property owners had not set forth a defense that "at least had the potential of succeeding at trial." Accordingly, we can infer that the *Riggs* Court concluded that a foreclosure sale price that was 14% below the appraised value did not meet the "materially less" standard in order to overcome the statutory presumption. In the instant case, the sale price is 89% of the highest appraisal value, representing a difference between the appraised value and the sale price of only 11%. In discussing this legislation, Representative Dennis cautioned that the determination of "materially less" is to be made on a case-by-case basis under the particular facts presented. Since the court will invariably be comparing the foreclosure sale price and the asserted fair market value of the property, it is axiomatic that a portion of the evidence presented will focus on the percentage difference between these two figures. However, we cannot establish

---

[9] The Bill was continued to the next session, which was held on May 5, 2010. At that time, the Bill passed the House of Representatives on third consideration by a vote of 92–2. The Senate amended the proposed Bill concerning the effective date, but made no material amendments. On May 13, 2010, the amended Bill passed the Senate by unanimous vote, and was returned to the House of Representatives, where it passed by a vote of 87–0 on May 20, 2010.

a bright-line percentage, above or below which the statutory presumption is rebutted. The legislative history cited above indicates that the "materially less" standard is still a significant burden. Consequently, if a 14% difference in price is not "materially less," we cannot conclude, under the circumstances presented here, that an 11% difference is. *Cf. Fischer v. Fritchel*, Inc., 364 S.W.3d 216, 224 (Mo. 2012) (noting that it was not persuaded to change the current Missouri "shocks the conscience" standard for voiding a foreclosure sale, even when the foreclosure price at issue was "barely more than 50 percent of the fair market value" of the property); *Commercial Bank, Inc. v. Lacy*, 371 S.W.3d 121, 125–26 (Tenn. Ct. App. 2012) (affirming summary judgment, and noting, in *dicta*, that, although the property owner presented evidence of an 8% difference between the foreclosure sale price and the fair market value of the property, the property owner "did not produce evidence sufficient to rebut the presumption that the foreclosure price was the fair market value").

In addition, according to Mr. Malone's undisputed affidavit testimony, the property at issue is only 85% complete and the house has "substantial damage, including multiple water leaks, [no] insulation . . . and . . . drainage and grading issues." As noted by Representative Fincher: "[A] lot of times properties in foreclosure are found to be in need of repair, or the projects may only be partially completed. The fair market value we are talking about in this context—that's the value of the property in the condition it's in at the time of the foreclosure." Accordingly, the fact that the property at issue here is undisputedly in need of completion and repairs, would negatively impact its fair market value. Still, from the totality of the circumstance, and taking Appellants' highest proposed appraisal value and all other factual allegations as true, we cannot conclude that the trial court erred in finding that the $667,400.00 foreclosure sale price was not "materially less" than the actual value of the property at the time of foreclosure.

We next consider whether summary judgment was properly granted in favor of GreenBank. As previously discussed, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. In this case, GreenBank moved for summary judgment on the issue of the deficiency. Because there are no allegations of "fraud, collusion, misconduct, or irregularity in the sale process," Tenn. Code Ann. §35-5-118(b), there was a presumption that the foreclosure price was equal to the fair market value of the property, and the burden shifted to Appellants to "set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The Appellants attempted to meet this burden by filing an affidavit regarding the appraised value of the property and asserting that the fair market value of the property was $750,000.00. In this case, however, the Appellant's failed to meet their burden to show a genuine issue of fact. As discussed above, even taking all the allegations in their affidavit as true, the price realized at the foreclosure sale is not materially less than the appraised value set forth by the Appellants. Similarly, in *Riggs*, this Court held

-15-

that the property owners failed to show that they had a meritorious defense allowing them to set aside the default judgment against them, when they submitted evidence that the foreclosure price was 14% less than the appraised value. Although the property owners did submit evidence showing a difference between the foreclosure price and the appraised value, this Court concluded that they "did not submit evidence that *could* have overcome the presumption that the foreclosure price was commensurate with the fair market value of the properties." **Riggs**, 2011 WL 5090888, at \*5 (emphasis in original). In this case, the Appellants have likewise not submitted evidence that could have overcome the presumption that the foreclosure price was fair because the foreclosure price is not materially less than the price they allege is the fair market value of the property, as a matter of law. Accordingly, the trial court correctly granted summary judgment in favor of GreenBank.

For the foregoing reasons, we affirm the order of the trial court. The case is remanded for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are assessed against the Appellants, Sterling Ventures, L.L.C., Charles F. Caudell, III, James C. Woodard, II, and their surety.

_____
J. STEVEN STAFFORD, JUDGE